**Richard STANGER, Plaintiff–Appellant,**

v.

**COLORADO DEPARTMENT OF REVENUE, MOTOR VEHICLE DIVISION, STATE OF COLORADO, Defendant–Appellee.**

No. 87CA1729.

Colorado Court of Appeals, Div. IV.

Aug. 24, 1989.

Rehearing Denied
Nov. 2, 1989.
Certiorari Pending (89SC604).

Wollrab & Associates, James C. Wollrab, Jr., Boulder, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., David M. Kaye, Asst. Atty. Gen., Denver, for defendant-appellee.

JONES, Judge.

Plaintiff, Richard Stanger, appeals from the district court judgment affirming the revocation of his driver's license by the Department of Revenue. We affirm.

In February 1987, plaintiff was arrested after he was seen driving erratically. His driver's license was subsequently revoked pursuant to § 42–2–122.1(1)(a)(II), C.R.S. (1984 Repl.Vol. 17) for his refusal to submit to chemical testing as required by § 42–4–1202(3), C.R.S. (1984 Repl.Vol. 17). Evidence educed at the revocation hearing was conflicting as to whether plaintiff's arrest was for driving under the influence of drugs (DUI-drug) or for driving under the influence of alcohol (DUI-alcohol). *See* §§ 42–4–1202(1) and (1.5), C.R.S. (1984 Repl.Vol. 17).

Following plaintiff's arrest, the arresting officer, observing suspected narcotics-induced behavior, requested plaintiff to take a blood test to screen for narcotics. According to the arresting officer's testimony, plaintiff initially consented to such a test, but later refused to submit to it. He then offered to take a breath test instead, but the arresting officer refused that request because breath tests do not determine the presence of narcotics. The officer again explained to plaintiff that he wanted

him to take a blood test because he believed narcotic drugs were involved.

Plaintiff testified that, besides offering to take a breath test, he also offered to take a urine test or any test other than a blood test because he was afraid of needles. However, the arresting officer testified that he did not recall these requests. In any event, the only test that plaintiff was offered was a blood test which he refused to take.

The hearing officer found that plaintiff was arrested for DUI-drug offenses and that he had refused to submit to chemical testing as required. He therefore revoked plaintiff's driver's license. On review, the district court affirmed the revocation.

## I.

Plaintiff initially contends that because he was charged with DUI-alcohol offenses rather than DUI-drug offenses, the arresting officer denied his statutory right to choose to take a breath test and to obtain the possibly exculpatory evidence a breath test would have provided. He further argues that he had the right to choose which test to take and that, therefore, his refusal to take the blood test was not justification for revocation. We find no merit in these contentions.

### A.

Section 42–2–122.1 is a remedial statute calculated to insure public safety on the highways and should be construed liberally in accordance with the public interest. *Nefzger v. Colorado Department of Revenue,* 739 P.2d 224 (Colo.1987); *Irey v. Nielson,* 716 P.2d 486 (Colo.App.1986).

The manifest legislative objective of promoting public safety by revoking the driving privileges of those who operate a motor vehicle while under the influence of alcohol or drugs is not conditioned on the filing of criminal charges for violation of § 42–4–1202. *Nefzger v. Colorado Department of Revenue, supra.*

Moreover, the Department of Revenue's determination of the facts with respect to administrative revocation "is independent of the determination of the same or similar facts in the adjudication of any criminal charges arising out of the same occurrence." Section 42–2–122.1(1)(c) C.R.S. (1984 Repl.Vol. 17). *See Nefzger v. Colorado Department of Revenue, supra.* When, as here, the statutory text evidences a legislative intent to treat separately the administrative and criminal consequences of driving under the influence of intoxicants, the statute should be interpreted in a manner that gives effect to the entire legislative scheme. *Nefzger v. Colorado Department of Revenue, supra; Travelers Indemnity Co. v. Barnes,* 191 Colo. 278, 552 P.2d 300 (1976); § 42–4–1202(1)(b), C.R.S. (1980 Repl.Vol. 1B).

Thus, we conclude that there is no significance here to the offense charged since, under § 42–2–122.1, administrative revocation proceedings are to be conducted independently of the particular criminal DUI charge.

### B.

Generally, any right to refuse to submit to chemical testing and any right to choose a particular type of chemical test must be found in statutory rather than constitutional law. *Brewer v. Motor Vehicle Division,* 720 P.2d 564 (Colo.1986); *People v. Gillett,* 629 P.2d 613 (Colo.1981). We therefore look to the appropriate statutory scheme concerning plaintiff's contentions regarding his right to choose which test to take.

Under § 42–2–122.1(1.5)(a)(II), C.R.S. (1988 Cum.Supp.), revocation of a person's driver's license is mandatory if the person "[r]efused to submit to a chemical analysis of his blood, breath, saliva, or urine as required by section 42–4–1202(3)." As to DUI-drug offenses, § 42–4–1202(3)(a)(III), C.R.S. (1984 Repl.Vol. 17) provided that any driver arrested for DUI-drug offenses *"may* be required to submit to *a* chemical test of his blood, saliva, and urine for the purpose of determining the drug content within his system...." (emphasis supplied) *Cf.* § 42–4–1202(3)(a)(III), C.R.S. (1988 Cum.Supp.) (a driver *"shall* be required to submit to a test or tests...."). We note that, unlike the foregoing provisions as to

DUI-drug offenses, the statutory provisions as to DUI-alcohol offenses explicitly give the driver the choice of submitting either to a blood or a breath test. Section 42–4–1202(3)(a)(II), C.R.S. (1984 Repl.Vol. 17); *Brewer v. Motor Vehicle Division, supra.* This language of choice is conspicuously absent in the provisions relating to the offense of DUI-drug.

We must presume that the General Assembly intended to treat the DUI-drug offense differently when, in 1983, it enacted the testing requirement provisions relating to that offense without explicitly according a suspected drug-influenced driver the right to choose between alternative types of drug tests. Hence, the arresting officer here could properly demand that plaintiff submit to a blood test.

We also reject plaintiff's alternative contention that the arresting officer was required to order plaintiff to take all three types of drug tests or no tests at all. Rather, we hold that an arresting officer acting at his sole discretion, was authorized under the foregoing statutory provisions to require a driver arrested for suspected DUI-drug offenses to submit to any one of the alternative types of drug tests which would reveal the presence of drugs. *See* § 42–4–1202(3)(b), C.R.S. (1984 Repl.Vol. 17). Thus, plaintiff's acknowledged refusal to submit to the test he was required to take mandated that his driving privilege be revoked.

Amendments to § 42–4–1202(3)(a)(II) (as to DUI-alcohol) and § 42–4–1202(3)(a)(III) (as to DUI-drugs), which apply to revocation proceedings under § 42–2–122.1 commenced on or after July 1, 1988, support and are consistent with our holding concerning the discretion of arresting officers to require suspected drug-impaired drivers to submit to a chemical test. *See* §§ 42–2–1202(3)(a)(II) and (III), C.R.S. (1988 Cum. Supp.).

## II.

As plaintiff's due process claim is raised for the first time on appeal to this court, it was not properly preserved for appellate review, and we decline to address it. *See*

*Brewer v. Motor Vehicle Division, supra; Colgan v. State,* 623 P.2d 871 (Colo.1981).

## III.

We have considered plaintiff's other assignments of error and find them to be without merit.

The judgment is affirmed.

REED, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

The gravamen of plaintiff's appeal is that, although the arresting officer may have been justified in arresting him and in requesting a test pursuant to § 42–4–1202(3)(a)(III), C.R.S. (1984 Repl. Vol. 17), the request triggered a search and seizure under the Fourth Amendment and Colo. Const. art. II, § 7. Therefore, plaintiff argues that § 42–4–1202(3)(a)(III) must be construed so that a search and seizure thereunder is reasonable. Hence, he concludes that if the seizure can be conducted in a less intrusive manner than by the taking of blood and still meet the compelling need of the state to deter persons under the influence of impairing drugs from driving on our highways, then that less intrusive seizure should be available to the arrestee. I agree. *See Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Karst, *Legislative Facts in Constitutional Litigation,* 1960 Sup.Ct.Rev. 75 at 82–83. *See also* § 42–4–1202(3)(b), C.R.S. (1984 Repl.Vol. 17) (tests shall be in accord with the utmost respect for the constitutional rights of the person being tested).

Implicit in § 42–2–1202(3)(a)(III) is that tests of blood, saliva, and urine are equally efficacious. Therefore, if the resources are equally available for the taking and testing of urine as are available for taking and testing of blood, I would hold that an arrestee who has *bona fide* fears, concern for health, or religious scruples should be allowed to opt for a urinalysis instead of a blood test. *See Schmerber v. California, supra. Cf. Graham v. Connor,* — U.S.

——, 109 S.Ct. 1865, 104 L.Ed.2d 443 (U.S. 1989) Rehnquist, C.J. (In Fourth Amendment contexts, the "reasonableness" inquiry is viewed in an objective light). *But see Davis v. Colorado Department of Revenue*, 623 P.2d 874 (Colo.1981) (interpreting prior statute relating to blood alcohol which held that if the arrestee did not opt for a blood test, he had no right to select between breath or urine testing).

Finally, I note the *Brewer v. Motor Vehicle Division*, 720 P.2d 564 (Colo.1986) and cases relied on therein must be read in a Fifth Amendment rather than a Fourth Amendment context and, therefore, are not dispositive of the issue here.

Thus, I would reverse the trial court with directions to remand to the Department for determination whether plaintiff did, in fact, express a *bona fide* fear concerning the needles to be used in the taking of his blood, whether he requested a urinalysis, and whether facilities were available to perform the tests. If these queries are answered affirmatively, I would order that the revocation of plaintiff's driving privileges be vacated and that his privileges be restored forthwith.