NORTHERN COLORADO CHAPTER, AMERICAN HISTORICAL SOCIETY OF GERMANS FROM RUSSIA, a Colorado non-profit corporation, Petitioner–Appellee, in 87CA1870

v.

Natalie MEYER, as Secretary of State of the State of Colorado, Respondent–Appellant, in 87CA1870.

W.O.J., INC., a Colorado non-profit corporation, and Northern Colorado Chapter, American Historical Society of Germans From Russia, a Colorado non-profit corporation, Plaintiffs–Appellants, in 88CA0536

v.

Natalie MEYER, as Secretary of State of the State of Colorado, Defendant–Appellee, in 88CA0536.

Nos. 87CA1870, 88CA0536.

Colorado Court of Appeals,
Div. VI.

Nov. 16, 1989.

Rehearing Denied Jan. 11, 1990.

Certiorari Denied July 16, 1990.

Sonheim, Helm & Less, Richard M. Williams, Arvada, for plaintiffs-appellants (No. 87CA1870) and plaintiffs-appellants (No. 88CA0536).

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Maurice G. Knaizer, First Asst. Atty. Gen., Denver, for Natalie Meyer, as Secretary of State of the State of Colo.

Opinion by Judge VAN CISE *.

This is a consolidation of two appeals from judgments interpreting various portions of the Bingo and Raffles Law, §§ 12-9-101 through 12-9-112, C.R.S. (1985 Repl. Vol. 5) (the Law), and of the rules and regulations promulgated by the secretary of state as licensing authority thereunder, covering and regulating the conducting of a game of chance known as "jar raffles." In No. 87CA1870, we affirm the district court judgment, and in No. 88CA0536, we affirm in part and reverse in part.

"Raffles" is a "game of chance ... conducted by drawing for prizes or the allotment of prizes by chance, by the selling of shares or tickets or rights to participate in such a game." Section 12-9-102(7), C.R.S. (1985 Repl.Vol. 5). For a jar raffle, "tickets are preprinted with markings distinguishing winners and nonwinners, each ticket so made that its markings and winning or nonwinning status cannot be known or revealed until the ticket is broken or torn apart." Section 12-9-102(18.1), C.R.S. (1989 Cum.Supp.). The "game" usually continues for several days or even weeks until all tickets have been sold.

## I. *License Suspension* (No. 87CA1870)

On July 10, 1986, Natalie Meyer, Secretary of State (Secretary), issued a "notice of temporary suspension of [raffles] license" and a "complaint and notice of hearing" to be held on August 7, concerning alleged violations of the Bingo and Raffles Law by Northern Colorado Chapter, American Historical Society of Germans from Russia (Society), a Colorado non-profit corporation. Copies of the above documents were served personally on the Society's president on July 21, and by certified mail on the Society's vice president on July 28, and on a representative of the Society at the address of the organization in Aurora on July 18.

■ Representatives of the Society, with their attorney, appeared at the appointed time and place and objected to proceeding with the hearing on the ground that the temporary suspension was invalid and the Secretary lacked jurisdiction because the hearing was being conducted more than ten days after the date of issuance of the notice of temporary suspension.

The hearing officer overruled the objection, and the hearing was conducted that day. At the conclusion of the hearing, the license was ordered suspended for two months, with the second month held in abeyance conditioned on the Society submitting assurances of understanding and intent to comply with the law and rules governing jar or pull tab raffles.

The Society sought review of this order in the Arapahoe County District Court, and obtained a stay of the Secretary's order until further order of that court. After a hearing, the district court on October 27, 1987, reversed the Secretary's order and ordered the suspension removed from the Society's record. On appeal by the Secretary, we affirm the district court.

Section 12-9-103(2)(a), C.R.S. (1985 Repl. Vol. 5) provides:

"Proceedings to suspend or to revoke a license shall be brought by the licensing authority by serving, in the manner provided in the Colorado rules of civil procedure, a complaint upon the licensee and notifying the licensee of the place and date, not less than twenty days after the date of service, at which a hearing thereon shall be held. The complaint shall set forth, in the manner of complaints in civil

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const., art. VI, Sec. 5(3), and § 24-51-1105, C.R.S. (1988 Repl.Vol. 10B).

action, the violations of this article or the rules and regulations of the licensing authority which the licensing authority alleges the licensee has committed. *The licensing authority may stop the operation of a game pending hearing, in which case the hearing must be held within ten days after such notice."* (emphasis supplied)

As the reviewing court concluded, with support from the record of the hearing before the Secretary, the temporary suspension order stopped the operation of the Society's raffles game which was then in progress; only some of the cards had been sold before the suspension occurred. Under these circumstances, the law requires that the hearing on the complaint "must be held within ten days" after the notice of suspension. It was not. Therefore, the Secretary lost jurisdiction to proceed with the suspension hearing and to suspend the Society's license.

Hence, the Secretary's orders were properly reversed by the reviewing court. *See Wilson v. Hill,* 782 P.2d 874 (Colo.App. 1989). *Cf. Mattingly v. Charnes,* 700 P.2d 927 (Colo.App.1985).

In view of our disposition of the appeal on the above ground, the parties' other contentions need not be addressed. We do not express any opinion as to the correctness of the reviewing court's other legal conclusions set forth in its order.

II. *Declaratory Judgment*
(No. 88CA0536)

Prior to the institution of this action, plaintiff W.O.J., Inc., a Colorado non-profit corporation, had sought a raffles license and its application had been denied by the defendant Secretary because it could not prove that it met the membership qualifications for the five years preceding its application. Plaintiff Society had one license, but had sought and had been denied additional raffles licenses. Both had been advised by the Secretary as to other prospects of operating a raffles game.

In March 1987, plaintiffs brought this action in the Denver District Court against the Secretary, as the raffles licensing authority, seeking a declaratory judgment answering the following questions:

1. May an organization have more than one license so that it can operate in more than one place?

2. May their national organizations become licensees?

3. May jar raffles be conducted in liquor establishments?

4. May jar raffles games be supervised by employees of members of the non-profit corporations?

5. May a reasonable rental be paid to an establishment providing an area for the licensee's jar raffles operations?

6. Are jar raffles governed by each section of the Law?

The facts are undisputed. Based upon the parties' cross motions for summary judgment and supporting briefs, the trial court in its conclusions of law answered questions 1, 2, 4, and 5 in the negative, and question 3 in the affirmative. As to question 6, it held that, unless otherwise specified in the Law, each provision of the Law applies to jar raffles.

Plaintiffs appeal all but the court's conclusion upon question 3, the correctness of which conclusion we do not address. We agree with the answers to questions 1, 2, 4, and 6 and affirm that portion of the judgment. We do not agree with the answer to question 5 and, therefore, reverse that portion.

1. *Multiple Licenses*

■ Plaintiffs contend that they are entitled to more than one license each, arguing that there is nothing in the Law, that restricts a qualifying organization to only one license and one location. They rely on § 12–9–104(2), C.R.S. (1985 Repl.Vol.) which, as amended in 1987, refers to "licenses" on two occasions:

"The *licenses* provided by this article shall be issued by the licensing authority to applicants qualified under this article upon payment of a fee ... The *licenses* shall expire at the end of the calendar

year in which *they* were issued...."
(emphasis supplied)

However, the wording of other sections of the statute supports the Secretary's position that licensees such as plaintiffs, if otherwise qualified, are entitled to only one license each and are limited to one location for each licensee. Section 12–9–102(12), C.R.S. (1985 Repl.Vol. 5) defines "licensee" as "any qualified organization to which *a license* has been issued by the licensing authority." Section 12–9–104(1), C.R.S. (1985 Repl.Vol. 5) states that any qualified organization "is eligible for *a license* to be issued by the licensing authority." Section 12–9–105(1), C.R.S. (1985 Repl.Vol.) uses the phrase "each applicant for *a license.*" As stated by the trial court: "[T]his language is consistent with the constitutional language, which provides that the Secretary shall 'issue *a license* for the conducting of such games of chance.'" Colo. Const. art. XVIII, § 2(2).

Furthermore, all licensees, except exempt umbrella charitable organizations such as United Way, *see* § 12–9–102(5.5), C.R.S. (1985 Repl.Vol. 5) must hold their games of chance at one location. Under § 12–9–105(1)(e)(I), C.R.S. (1985 Repl.Vol. 5), the applicant must specify *"[t]he place* where such games of chance are intended to be held, operated and conducted under the *license* applied for." *See also* § 12–9–106, C.R.S. (1985 Repl.Vol. 5). Only with reference to exempt organizations (and plaintiffs do not qualify as such) are the words "place or places" used.

We agree with the trial court's conclusion that the only reasonable interpretation is that the general assembly intended to limit the operation of non-exempt but otherwise qualified organizations to only one place and one license each.

### 2. *National Organizations as Licensees*

██ Colo. Const. art. XVIII, § 2(2), provides that the Secretary shall issue a license:

"to any bona fide chartered branch, lodge or chapter of a national or state organization or to any bona fide religious, charitable, labor, fraternal, edu-

cational, voluntary firemen's or veterans' organization which operates without profit to its members and which has been in existence continuously for a period of five years immediately prior to the making of said application for such license and has had during the entire five-year period a dues-paying membership engaged in carrying out the objects of said corporation or organization...."

The general assembly interpreted this constitutional provision to include only those organizations "within this state." *See* §§ 12–9–102(1), (2), (4), (6), (9), (20), (21), and (22), C.R.S. (1985 Repl.Vol. 5).

Contrary to plaintiffs' contention that national organizations are eligible under the above language, we agree with the trial court's conclusion that the general assembly, by using the phrase "within this state," excluded those organizations which operate outside the state. Only their branches, lodges, or chapters, if otherwise qualified, are eligible.

### 3. *Conducting Games in Liquor Establishments*

As stated above, the ruling on this question was not appealed, and no opinion is expressed here on that question.

### 4. *Supervision of Games by Employees of Members*

██ There is no merit to plaintiffs' contention that there is no statutory prohibition against employees of members operating jar raffles games.

Raffles is a "game of chance" as defined in Colo. Const. art. XVIII, § 2(3), and in § 12–9–102(7) of the Law. *See also* § 12–9–102(18.1), C.R.S. (1989 Cum.Supp.). Colo. Const. art. XVIII, § 2(4)(b), specifies that: "[N]o person except a bona fide member of any organization may participate in the management or operation of any such game." Section 12–9–105(2), C.R.S. (1985 Repl.Vol. 5) requires that in the application there be designated "active members of the applicant organization under whom the games of chance described in the application are to be held, operated, and conduct-

ed...." Section 12–9–107, C.R.S. (1985 Repl.Vol. 5) specifies that "[N]o person shall hold, operate, or conduct any games of chance under any license issued under this article except an active member of the organization to which the license is issued...."

Thus, the trial court's answer to question 4 is correct.

### 5. *Rental for Raffles Games*

 We agree with plaintiffs that rent is a legitimate permitted expense for all games of chance, including raffles, and, therefore, reverse the trial court's ruling on this question. The Secretary's assertion, adopted by the trial court, that rental for premises is payable only in connection with the conducting of bingo or lotto games, does not conform to the provisions of the Law.

Section 12–9–108(5), C.R.S. (1985 Repl. Vol. 5) provides in pertinent part:

> "No item of expense shall be incurred or paid in connection with holding, operating, or conducting *any game of chance* pursuant to any license except bona fide expenses of a reasonable amount. Expenses may be incurred ... *for rent* if the premises are rented...." (emphasis supplied)

"Game of chance" is defined in § 12–9–102(7) to include raffles. In § 12–9–102(18), C.R.S. (1985 Repl.Vol. 5), "premises" means "any room, hall, enclosure, or outdoor area used for the purpose of playing a game of chance.

That the "reasonable amount" of the rental is to be "determined by the secretary of state in rules and regulations for each occasion," does not prohibit payment of rent. It merely requires the Secretary to determine the amount of rent that is reasonable.

### 6. *Applicability of the Bingo and Raffles Law to the Game of Raffles*

 As earlier noted, raffles is a game of chance. Therefore, any reference to games of chance in the Law includes raf-

fles, except as otherwise specified. The trial court's ruling so holding is correct.

We do not address the other contentions raised by the parties on this appeal because they were not included in the "claims for relief," in the "complaint for declaratory judgment," or in the trial court's rulings on those claims.

The judgment is affirmed as to the answers to question 1, 2, 4, and 6. The judgment as to the answer to question 5 is reversed, and the cause is remanded for modification of that part of the judgment.

KELLY, C.J., and SILVERSTEIN,* J., concur.